IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:11CR206 |
| | ) | |
| vs. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| JAMES M. WEISS, | ) | |
| | ) | |
| Defendant. | ) | |

      This matter is before the court on a motion to suppress filed by defendant James M. Weiss (Weiss).  **See** Filing No. 35.  Weiss is charged in the Indictment with the manufacture and production of child pornography (Count I) in violation of 18 U.S.C. § 2251(a), the receipt and distribution of child pornography (Count II) in violation of 18 U.S.C. § 2252A(a)(2), and the possession of child pornography (Count III) in violation of in violation of 18 U.S.C. § 2252(a).  **See** Filing No. 21 - Indictment.  Weiss seeks to suppress all oral and written statements made by him to law enforcement officers on May 17, 2011.  **See** Filing No. 35.

      On October 6, 2011, the court held an evidentiary hearing on the motion.  Weiss was present with his counsel, Ryan M. Hoffman and Molly M. Blazek.  Assistant United States Attorney Michael P. Norris represented the United States.  The court heard the testimony of Investigator Scott Haugaard (Investigator Haugaard) of the Nebraska State Patrol (NSP).  During the hearing, the court received into evidence an NSP Voluntary Statement of James Weiss dated 5/17/2011 (Exhibit 1); an NSP Advice of Rights Form dated 5/17/2011 (Exhibit 2); an NSP Advice of Rights Form dated 8/30/2011 (Exhibit 3); and a DVD of an interview of James Weiss (Exhibit 4).  The court took judicial notice of the complaint (Filing No. 1), applications and affidavits for search warrants found at 8:11MJ120 and 8:11MJ136, and a Third-Party Custodian Investigation prepared by Pretrial Services (Filing No. 9 - Sealed).  A transcript (TR.) of the hearing was filed on October 18, 2011, upon which the motion was deemed submitted.  **See** Filing No. 45.

## FINDINGS OF FACT

On May 17, 2011, shortly after 6:00 a.m., approximately eight officers from a combined law enforcement task force participated in executing a knock-and-announce search warrant at a single family dwelling located near 42nd and Harrison Streets in Omaha (TR. 8-10, 32). The task force members parked their vehicles at the corner of 42nd and Harrison at an abandoned convenience store and did not block the driveway of the residence (TR. 27). With the exception of one uniformed officer, the task force members were dressed in plain clothes and raid vests with police insignia (TR. 11). They approached the residence with their guns drawn (TR. 32).

Bill Manning, the primary homeowner or renter, answered the door (TR. 9). Also present inside the house were Amy Manning, two juveniles, and Weiss (TR. 10). Mr. Manning was asked to step outside while the officers secured the residence (TR. 10). Sergeant Tom Meola (Sergeant Meola) talked to Mr. Manning, then informed Investigator Haugaard that Weiss was the only person at the residence who had access to a computer and the Internet (TR. 10-11).

Once inside the residence, Investigator Haugaard approached Weiss, asked to speak to him privately, and led him downstairs (TR. 12). Investigator Haugaard initially testified that when he asked Weiss to speak with him privately Weiss gave an affirmative answer (TR. 12). Investigator Haugaard then admitted he did not recall whether Weiss responded at all other than to follow him downstairs to the unfinished basement of the home (TR. 12-13). Investigator Haugaard spoke to Weiss as they stood in the middle of the main room in the unfinished basement (TR. 36-37). The room, which was approximately fifteen by thirty feet in size with a hard floor and painted concrete walls, appeared to be used for storage and contained filing cabinets and a drum set (TR. 13). Investigator Haugaard testified he and Weiss were in the basement for approximately twenty minutes during which time they were alone except for occasional appearances by law enforcement officers who came down to the basement but did not participate in the interview (TR. 14). Investigator Haugaard used a digital recorder on his raid vest to record his interview with Weiss (TR. 14; Ex. 4).

Investigator Haugaard began the interview by telling Weiss he was not under arrest and was free to leave (TR. 17, 18; Ex. 4 - 9:20).  According to Investigator Haugaard, Weiss responded "[i]n an affirmative. . . [h]e shook his head . . . that he acknowledged it" (TR. 17).  Investigator Haugaard explained he was at the residence for an investigation related to child pornography and asked Weiss whether he knew anything about it (TR. 17).  Weiss responded affirmatively (TR. 17).  After telling Weiss that he had everything he needed for a conviction, Investigator Haugaard proceeded to ask, and Weiss answered, a series of questions about Weiss' "history of child pornography, where he stores it, the manner in which he stores it, when he views it, the frequency" (TR. 18, 39-40).  The discussion included Weiss' use of file sharing programs, his search terms, the length of time he had been viewing child pornography on the Internet, the number of images and videos he downloaded, his preferences, and where the computers containing the images could be located in the house (Ex. 4 - 9:50).  According to Investigator Haugaard, "It was for lack of a better term a full confession" (TR. 18).  The initial conversation lasted approximately ten minutes and was conducted in conversational tones (TR. 18-19; Ex. 4).  Weiss showed no signs that he did not understand the questions posed to him or that he was under the influence of alcohol or narcotics (TR. 19).

After the first part of the interview, Investigator Haugaard asked Weiss to write a statement (TR. 20).  "I told him that this was an opportunity for him to – to speak to the U.S. Attorney's Office and a judge.  I indicated to him that this is an opportunity for him to basically put in his own words what he had just told me in his verbal confession" (TR. 21).  Weiss asked if he had to write the statement at that time or if he could "get it to [Investigator Haugaard]" (TR. 44; Ex. 4 - 18:50).  Investigator Haugaard responded that he preferred if Weiss wrote the statement at that time, but was not going to force him, it was up to Weiss (TR. 44; Ex. 4 - 18:50).  Investigator Haugaard and Weiss discussed the written statement prior to Weiss writing it (TR. 22).  Weiss asked Investigator Haugaard what Weiss should write and Investigator Haugaard told Weiss what Investigator Haugaard had seen others write and suggested an apology worked best (TR. 22, 45).

After the initial verbal interview and written statement were completed, Investigator Haugaard read Weiss his *Miranda* rights (TR. 21).  "[T]hat's a – a standard for what we do.

I have a verbal confession. I have a written confession. I want him to know that he has rights. I read him his rights and then I followed up with a secondary interview." (TR. 22). Investigator Haugaard prefaced his advisement of *Miranda* warnings by telling Weiss, "It's a formality as far as I'm concerned because you're not under arrest and you're free to leave" (Ex. 4 - 25:21; TR. 48). Investigator Haugaard advised Weiss of his rights by providing Weiss with an NSP Advice of Rights form and reading each of the rights to Weiss (TR. 24; Ex. 2; Ex. 4 - 25:20, 26:07). Weiss appeared to understand his rights, waived those rights, signed the form, and continued to talk to Investigator Haugaard (TR. 25). The remainder of the interview was "a general recap" of the conversation that took place before the rights advisory and was also conversational in tone (TR. 25; Ex. 4).

At the conclusion of the interview, Investigator Haugaard asked Weiss whether he had anything else to say (TR. 25) Investigator Haugaard then informed Weiss they were finished and asked Weiss to show the officers "some things in the bedroom" (TR. 25). Weiss showed the officers to his bedroom, located on the second floor of the home (TR. 25). Because Weiss was asked by the Mannings to immediately leave the premises after they found out the subject of the investigation, the officers assisted Weiss in locating and collecting his "guns and other gear" (TR. 26). The officers assisted Weiss in arranging to retrieve his belongings from the Manning residence (TR. 27). The officers then removed Weiss' weapons from the Manning residence and put them in law enforcement vehicles for safekeeping (TR. 27). Weiss got his weapons back from law enforcement the following day (TR. 27).

Weiss was arrested on May 23, 2011, after forensic examinations of his computer and cell phone "located images that Jim Weiss had produced with a juvenile male that lived in the residence" (TR. 23) He was arrested as he was going to work, handcuffed and taken to the NSP's office on 108th and I Streets (TR. 30-31). Weiss declined to give a statement at that time (TR. 31).

**LEGAL ANALYSIS**

Weiss makes two separate but related arguments. First, Weiss argues the interaction between himself and Investigator Haugaard amounted to a custodial

interrogation and as such Weiss was entitled to be advised of his *Miranda* rights at the outset of the interview.  **See** Filing No. 36 - Brief p. 2-8.  Weiss argues that statements he made after being read his *Miranda* rights should also be suppressed because he had already made statements against his interest during a custodial interrogation and Investigator Haugaard's comments that *Miranda* was a mere formality "significantly dilute[d] the warning that *Miranda* is supposed to provide" (TR. 54).

Second, Weiss challenges the voluntariness of his oral and written statements.  **See** Filing No. 36 - Brief p. 9-10; TR. 49-50.  Specifically, Weiss argues his "rational options were distorted by Investigator Haugaard's statements concerning lenient treatment and by suggesting that there was some benefit to showing the Judge that Weiss was truthful and honest."  **See** Filing No. 36 - Brief p. 9.  Weiss contends his "will was overborne in such a way that his statements were the product of coercion" and therefore were involuntary.  *Id.* at 9-10.

In response, the government argues Weiss was not in custody at the time he made verbal and written statements to Investigator Haugaard on May 17, 2011.  **See** Filing No. 39 - Response p. 5.  The government further argues Weiss' statements were made voluntarily.  *Id.*

**1.   Custodial Interrogation**

It is well settled that a law enforcement official is required to advise an individual of his or her *Miranda*[1] rights before questioning if that individual is in custody.  *United States v. Elzahabi*, 557 F.3d 879, 883 (8th Cir. 2009).  "An individual is in custody [for purposes of *Miranda*] when placed under formal arrest, or when his or her freedom is restricted to a degree akin to formal arrest."  *Id.* (**citing** *United States v. Ollie*, 442 F.3d 1135, 1137 (8th Cir. 2006)).  Whether a defendant was "in custody" is an objective inquiry.  *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2402 (2011).

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 467 (1966).

> Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave. . . . [T]he court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.

*Id.* (**quoting** *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).

The Eighth Circuit has identified the following six factors to consider when determining whether an individual is in custody:

> (1) whether the suspect was informed that he or she was free to leave and that answering [questions] was voluntary; (2) whether the suspect possessed freedom of movement; (3) whether the suspect initiated contact or voluntarily acquiesced; (4) whether strong-arm tactics or strategies were employed; (5) whether the atmosphere was police-dominated; or, (6) whether the suspect was placed under arrest at the end of questioning.

*Elzahabi*, 557 F.3d at 883 (**citing** *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)). Application of these factors is not mechanical and the issue of whether an individual is in custody "cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." *United States v. Czichrary*, 378 F.3d 822, 827-28 (8th Cir. 2004); **see also** *United States v. Perrin*, No. 10-1885, 2011 WL 5105805, at *1 (8th Cir. Oct. 28, 2011) (stating "*Griffin* is simply a rubric for considering the ultimate issue, not a mandatory checklist"). From this principal it follows that the presence or absence of any one factor is not determinative on the issue. *Griffin*, 922 F.2d at 1347. Instead, a court must "examine the extent of the physical or psychological restraints placed on the suspect during interrogation in light of whether a 'reasonable person in the suspect's position would have understood his situation' to be one of custody." *Id.* (**quoting** *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)).

The facts surrounding the defendant's non-custodial admissions in *Perrin*, are similar to the case at issue. See *Perrin*, 2011 WL 5105805. In *Perrin*, at least six law enforcement officers entered the home where the defendant resided to execute a search warrant related to a child pornography investigation. *Id.* at *2. The residents of the home,

including the defendant, were told "the officers were looking for child pornography; the residents were free to leave; if anyone remained, he or she had to stay in the living room; and [the officer] wanted to ask questions but no one had to answer." *Id.* In response to the officer's question, the defendant admitted using "Limewire, a file-sharing software often associated with child pornography." *Id.* The defendant agreed to speak privately with the officer in the defendant's bedroom. *Id.* The officer questioned the defendant for approximately ten minutes in the defendant's bedroom while another officer searched the room. *Id.* The door to the bedroom was closed "but remained cracked open." *Id.* The officer did not "touch or threaten [the defendant], make any promises, or raise his voice." *Id.* In holding the defendant was not in custody when he was questioned by law enforcement in his bedroom, the court noted he volunteered to talk to the officer in his bedroom, the questioning lasted only ten minutes, the officers did not physically restrain the defendant or "position[ ] themselves or act[ ] to inhibit [the defendant's] exit." *Id.*

Under the totality of the circumstances, the court finds that Weiss was not in custody for purposes of *Miranda* when he was questioned by Investigator Haugaard on May 17, 2011. First, Investigator Haugaard specifically told Weiss he was not under arrest and was free to leave at the onset of the interview (Ex. 4 - 9:20). Review of the audio recording shows Investigator Haugaard reiterated that point when he asked Weiss to write a statement, and again upon Weiss' completion of the written statement and before the advisement of *Miranda* rights (Ex. 4 - 17:00, 25:21). This factor weighs heavily in favor of finding Weiss was not in custody. **See** *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (finding of custody mitigated when suspect was told he was not under arrest); **see also** *U.S. v. Boslau*, 632 F.3d 422, 428 (8th Cir. 2011) (noting "steadfast and unequivocal statements" that investigators were not going to arrest defendant and that defendant "could leave at any time reveal that a reasonable person would still believe he was free to end the interview and leave"); *Ollie*, 442 F.3d at 1138 (stating "explicit assertion that the defendant may end the encounter . . . generally removes any custodial trappings from the questioning").

The court's determination of the facts as they relate to several other *Griffin* factors also weighs in favor of finding Weiss was not in custody. The evidence shows Weiss'

freedom of movement was not restrained during the interview.  The fact the questioning took place in the basement of the residence is largely irrelevant to the analysis.  **See** *Boslau*, 632 F.3d at 428 (finding defendant not in custody when interrogated in a small, windowless room at police station).  There is no evidence Investigator Haugaard used any strong-arm tactics when questioning Weiss.  The tone of the interview was conversational with Investigator Haugaard asking questions in a non-threatening manner.  While Investigator Haugaard told Weiss there was already enough evidence for a conviction, the court finds such an assertion is not coercive in and of itself.  In addition, the questioning did not take place in an environment dominated by police.  Although the law enforcement officers in the residence outnumbered the residents, Weiss agreed to accompany Investigator Haugaard to the basement of the residence where they spoke in relative privacy.  While the other officers were present in the residence executing the search warrant, they did not participate in the interview.  Finally, Weiss was not placed under arrest at the end of the interview on May 17, 2011.  Instead he was free to go to work and the officers even assisted him with removing some of his belongings from the residence where he was no longer welcome.  Because Weiss was not in custody for purposes of *Miranda*, Investigator Haugaard was not required to advise Weiss of his *Miranda* rights before questioning him in the basement of the residence.

### 2.   Voluntariness

The touchstone for the admissibility of a defendant's statements is voluntariness. *Brown v. Mississippi*, 297 U.S. 278 (1936).  "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *Boslau*, 632 F.3d at 428 (**quoting** *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004)).  The court must look to the totality of circumstances in determining whether or not the statements were voluntary, "examining both the 'conduct of the officers and the characteristics of the accused'" *Id.*; **see** *Mincey v. Arizona*, 437 U.S. 385 (1978); *Colorado v. Connelly*, 479 U.S. 157 (1986); *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).  Among the factors the court considers are "the degree of police coercion, the length of the interrogation, its

location, its continuity, and the defendant's maturity, education, physical condition and mental condition" *Boslau*, 632 F.3d at 428 (**quoting** *Sheets v. Butera*, 389 F.3d 772, 779 (8th Cir. 2004)). It is the government's burden to "prove by a preponderance of the evidence that the challenged statements were voluntary." *Boslau*, 632 F.3d at 429 (**quoting** *LeBrun*, 363 F.3d at 724).

As discussed above, Weiss was not in custody when he made his statements. Investigator Haugaard did not raise his voice or threaten Weiss. In fact, the court's review of the audio recording of the interview corroborates Investigator Haugaard's testimony that the tone of the interview was calm and conversational. Investigator Haugaard made no promises of favorable treatment. In fact, he prefaced his questions to Weiss with the statement, "I can't tell you that its in your best interest to talk to me" (Ex. 4 - 9:40). At most, Investigator Haugaard suggested Weiss could be sentenced "on the low end" in light of his cooperation but qualified that statement by adding "it depends on the judge" (Ex. 4 - 17:40). While there was a significant law enforcement presence at the residence due to the execution of the search warrant, Weiss' interview involved a one-on-one interaction with Investigator Haugaard. It was not a police-dominated setting. Moreover, the interview took place in the basement of the residence where Weiss had been residing for four years, and only after Weiss voluntarily followed Investigator Haugaard to that location. The interaction in the basement between Investigator Haugaard and Weiss lasted less than twenty-five minutes (TR. 18; Ex. 4); **see** *United States v. Muhlenbruch*, 634 F.3d 987, 998 (8th Cir. 2011) (noting the significance of the fact that the defendant was interviewed for a "mere twenty-two minutes" in finding the defendant's confession was voluntary); *Boslau*, 632 F.3d at 429 (describing a forty-three minute interview as "comparatively brief"); *LeBrun*, 363 F.3d at 726 ("plac[ing] substantial weight on the fact that [the defendant] confessed after a mere thirty-three minutes").

Under these circumstances, the court finds no evidence of coercion. The evidence does not support Weiss' argument that his will was overborne but instead suggests Weiss' statements were made during a cooperative and consensual interaction with law enforcement. For these reasons, the court finds the government has met its burden of proof and Weiss's verbal and written statements were made voluntarily.

**IT IS RECOMMENDED TO CHIEF JUDGE LAURIE SMITH CAMP that:**

James M. Weiss' Motion to Suppress (Filing No. 35) be denied.

## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 15th day of November, 2011.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.